IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

EQUAL EMPLOYMENT                                                                                PLAINTIFF
OPPORTUNITY COMMISSION

V.                                                                              CIVIL ACTION NO.: 1:18-CV-177-SA-DAS

FIRST METROPLITAN FINANCIAL
SERVICE, INC.                                                                                   DEFENDANT

ORDER AND MEMORANDUM OPINION

The Equal Employment Opportunity Commission ("the Commission") filed a Complaint [1] on September 18, 2018 against First Metropolitan Financial Service, Inc., alleging that its employment practices violate Title I of the Civil Rights Act of 1991, Title VII of the Civil Rights Act of 1964, and the Equal Pay Act of 1963. The Commission is seeking relief on behalf of two females formally employed by the Defendant. Presently before the Court is a Motion for Summary Judgment [37] filed by First Metropolitan seeking dismissal of all claims against it. The issues are fully briefed and ripe for review.

*Factual and Procedural History*

First Metropolitan is a financial lending company with seventeen offices throughout Mississippi and Tennessee. Typically, each office is staffed with three full time employees: a Customer Service Representative, Assistant Branch Manager and a Branch Manager. There are, however, offices with only two full-time employees and one part-time employee.

DeWayne Anderson, First Metropolitan's Chief Operating Officer, is responsible for ensuring the company is profitable and running efficiently. His duties also involve interviewing and hiring Branch Managers. He testified that Randy Smith, a Division Manager, sometimes aided him in the process. Anderson testified that when considering a candidate for a Branch Manager

position, he reviews their application, talks to the Division Manager, interviews the candidate and inquires about the candidate's expected salary. According to Anderson, if the proposed salary was not astronomical, he would accept and hire the candidate if he believed they could perform the duties. In order to satisfy the requisite Branch Manager qualifications, according to First Metropolitan's job description, one must have a high school diploma or equivalent degree, 3-5 years of experience in the finance or lending industry, previous experience supervising multiple employees and being responsible for production outcomes, and experience in filing judgments, garnishments, and completing bankruptcy paperwork.

In 2010, Emily Smith, a female, applied for a Branch Manager position in First Metropolitan's Tupelo branch. Smith included the following education and work history on her application: she graduated from Fulton High School and later earned 18 credit hours from Itawamba Community College. Under licenses earned, she listed "Credit Insurances – life, property, motor club, A & H/Notary Public." In addition, prior to applying for the Tupelo position, Emily Smith had nearly ten years of financial management experience and five years managing non-finance companies.

Once her application was reviewed, Randy Smith interviewed Emily Smith.[1] In usual fashion, Randy Smith asked Emily Smith her preferred salary. According to Emily Smith, she requested a starting base salary of $43,500, which was the salary she earned at Advantage Financial Services prior to joining First Metropolitan. Anderson and Randy Smith discussed her qualifications and preferred salary. Randy Smith later informed Emily Smith that First Metropolitan could only afford to pay her $36,000.00 annually. Emily Smith accepted the offer with an understanding that her base salary of $36,000.00 did not include the additional $2,400.00

---

[1] Emily Smith and Randy Smith are of no relation.

car allowance. To her surprise, her actual base salary was $33,600.00 plus a $2,400.00 car allowance.

In December of 2014, Emily Smith transferred to the Fulton branch in Fulton, Mississippi, to work as its Branch Manager. After her transfer, First Metropolitan increased her base salary by $3,000.00, raising her base salary to $36,600.00, allegedly because the Fulton branch had more employees than the Tupelo branch. Emily Smith claims that she was not involved in determining her new base salary.

After Emily Smith transferred to the Fulton branch, the Tupelo branch no longer had a Branch Manager. Consequently, First Metropolitan promoted Erica Hutcherson, a female, to replace Emily Smith in 2014. Hutcherson had previously worked as the Customer Service Representative at the Tupelo branch from 2011 to 2013 and as Assistant Manager from 2013 until Emily Smith's transfer.[2] As a Customer Service Representative, Hutcherson was paid hourly. When she was promoted from Assistant Branch Manager to Branch Manager, she received a pay raise to $23,000.00 annually. According to Hutcherson, she was never asked about her desired salary prior to her promotion. When asked why Hutcherson's salary was not higher, Anderson stated, "she just had a baby" and "was coming back to Memphis quite a bit." *See* DeWayne Anderson's Deposition [41-6]. Despite Hutcherson's work experience in every employment capacity at First Metropolitan, Anderson stated that he was not sure whether Hutcherson was qualified to be a Branch Manager. According to Hutcherson, she never received a pay raise during her tenure as Branch Manager from 2014 to 2016. Due to dissatisfaction with anticipated changes that First Metropolitan was planning to make, Hutcherson resigned from her position in November of 2016.

---

[2] Before joining Frist Metropolitan as a Customer Service Representative, she worked at Factory Connection as an Assistant Manager, America Against Drugs as a Telephone Sales Associate, and Cowgirl Gourmet as a Mixer.

Hutcherson's resignation left the Tupelo branch without a Branch Manager, similar to the circumstance as when she was hired. According to Anderson, the Tupelo branch was in a "bind". After Hutcherson's resignation, Corey Caygle, a male, applied for the Tupelo branch position. Caygle had previously worked for First Metropolitan's competitor, Pioneer Credit Company, as a Branch Manager. Compared to Emily Smith's ten years of financial management experience and Hutcherson's five years alike, Caygle had only four years of financial management experience and was offered a higher base salary than Emily Smith and Hutcherson. When Anderson asked Caygle about his preferred salary, Anderson testified that Caygle demanded to be paid $48,000.00, which was his base salary at Pioneer. Anderson hired Caygle and agreed to pay him $48,000.00 as his base salary because, as Anderson testified, the Tupelo office was in a "bind".

According to Emily Smith, she was not aware of the differences in salary until she received a faxed copy of Caygle's new hire information. She stated that this fax was incorrectly faxed to her office and that she was unaware of the identity of the sender. After receiving the fax, she eventually contacted Randy Smith around December of 2016 and informed him that she was not happy with the current situation at First Metropolitan and that she was aware of the pay differences between her and Caygle. Randy Smith informed Emily Smith that he would contact Anderson and would follow-up with her. After Randy Smith failed to follow up, Emily Smith contacted Anderson and informed him that she was aware that Caygle earned a higher base salary and that she believed she was treated unfairly. Specifically, Emily Smith told Anderson that her "feelings were hurt because she did not think someone with less experience that is doing the same job should be paid more." *See* Emily Smith's Deposition. According to Emily Smith, Anderson refused to discuss employee salaries and suggested that she improve her performance at work instead. Emily Smith later resigned as Branch Manager in Fulton.

Emily Smith filed an EEOC Charge with the Commission alleging that First Metropolitan's salary disparity violated Title VII and the Equal Pay Act. On August 3, 2018, the Commission issued a Letter of Determination finding reasonable cause to believe that First Metropolitan violated the law and invited First Metropolitan to engage in informal methods of conciliation in order to eliminate unlawful employment practices and to provide relief to the victims. The Commission later issued First Metropolitan a Notice of Failure of Conciliation on August 27, 2018, after failing to secure a conciliation agreement acceptable to the Commission.

The Commission filed a Complaint [1] on September 18, 2018, on behalf of Emily Smith and a class of aggrieved female employees alleging that First Metropolitan paid female Branch Managers less than male Branch Managers because of gender. First Metropolitan filed a Motion for Summary Judgment seeking dismissal of all the Plaintiff's claims. In the Commission's response, it informed the Court that the class of aggrieved parties that originally joined the suit has been reduced to only two females—Emily Smith and Erica Hutcherson. Therefore, the Court will only consider facts relevant to their tenure at First Metropolitan.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the

absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

This is a wage discrimination case. The Commission claims that First Metropolitan violated both the Equal Pay Act and Title VII by paying female Branch Managers lower base salaries than their male counterparts. First Metropolitan seeks summary judgment on all claims arguing that it considered factors other than sex in establishing the salaries of its male and female Branch Managers. Although the Title VII and Equal Pay Act claims are supported by the same set of facts, the Court will analyze them separately below because each of the claims' *prima facie* case has different ramifications on the burdens of proof and production.[3]

I. *Equal Protection Act claim*

The Equal Pay Act prohibits wage discrimination "between employees on the basis of sex by paying wages to employees in such establishment for equal work on jobs the performance which

---

[3] *See Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983) (highlighting key differences in the burdens of proof and production between a Title VII and Equal Pay Act claim).

requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C.A. § 206(d)(1). "The Act's basic structure and operation are similarly straightforward." *Corning Glass works v. Brennan*, 417 U.S. 118, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974). "The plaintiff bears the initial burden of making out a *prima facie* case of discrimination under the Equal Pay Act by showing that an employer compensates employees differently for equal work." *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 723 (5th Cir. 2011) (additional citations omitted). Once the plaintiff shows that he or she is paid less than an employee of the opposite sex for substantially equal work, "the burden of proof shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983). "The exceptions are affirmative defenses on which the employer has the burden of both production and persuasion." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974).

    *i.*    *Prima Facie Case*

In order to establish a *prima facie* case under the Equal Pay Act, the plaintiff must show "(1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that she was paid less than members of the opposite sex." *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986).

The Commission asserts that First Metropolitan is an employer for the purposes of the Equal Pay Act because it is a traditional installment lender with seventeen branch offices in locations throughout West Tennessee and North Mississippi. First Metropolitan does not dispute this claim. According to 29 United States Code Section 203, an "employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes

a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C.A. § 203(d). Thus, the Defendant is subject to the Equal Pay Act. In addition, DeWayne Anderson and Randy Smith are both considered employers because they are persons acting directly or indirectly in the interest of First Metropolitan. *Id*.

The Commission also contends that the two female Branch Managers were performing work which required equal skill, effort, and responsibilities under similar working conditions as male Branch Managers. To establish that the female Branch Managers engaged in equal work, the Commission need only prove "that the 'skill, effort, and responsibility' required in the performance of the job is 'substantially equal." *Jones*, 793 F.2d at 722-23 (additional citations omitted). "The Act necessarily requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated." *Id*.

To meet this burden, the Commission relies on Anderson's deposition testimony in which he acknowledges that the Branch Managers had the same responsibilities. When asked whether Hutcherson and Emily Smith had the same responsibilities at the Tupelo branch, Anderson responded "yes". *See* Anderson Dep. [41-6]. When asked whether Caygle had additional Branch Manager responsibilities in comparison to Hutcherson and Emily Smith, Anderson responded "same". *See id*. Anderson also testified that Emily Smith and Caygle had the same job description and were required to perform the same duties as Branch Manager of the Tupelo branch. *See id*.

Notwithstanding Anderson's deposition testimony, the Defendant argues that Emily Smith and Caygle did not have substantially equal responsibilities as Branch Manager of the Tupelo branch. In support thereof, First Metropolitan argues that it hired Emily Smith in July 2010 to open and manage a new branch office in Tupelo, Mississippi. New offices, according to Anderson, have

8

relatively few to no outstanding loans and thus less responsibility. In comparison, Caygle was hired six years later and had over one million in outstanding loans to manage. This difference, the Defendant argues, proves that Emily Smith's initial responsibilities were less demanding than Caygle's responsibilities and that the difference in pay is justified. The Defendant also argues that it imposed specific requirements related to growth of outstanding loans, past due accounts, and profits on Caygle that were not imposed on Emily Smith.

While First Metropolitan has articulated some differences in Emily Smith and Caygle's responsibilities as Branch Manager, it misapplies the standard that the Court must apply. Although "what constitutes equal skill, effort, or responsibility cannot be precisely defined . . . it should be kept in mind that 'equal' does not mean 'identical.'" *See* 29 CFR §1620.14(a). "In determining whether job differences are so substantial as to make jobs unequal, it is pertinent to inquire whether and to what extent significance has been given to such differences in setting the wage levels for such jobs." *Id*. Based on Anderson's deposition testimony, there is not sufficient evidence that this difference in demands had significant influences on the Defendant's decision to pay Caygle more. In his deposition, Anderson testified as follows:

```
3        Q. Is there any other factor that you
4     consider? Do you consider any other factors
5     other than what the applicant requests?
6        A.   No.
7        Q. When determining salary?
8        A. Where they're coming from.   If
9     they're coming from another finance company,
10    we ask them how much they need.
11       Q. And once you say how much they need,
```

| | |
|---|---|
| 12 | what do you mean? |
| 13 | A. How much do they want. |
| 14 | Q. Okay. And as long as it's not |
| 15 | astronomical, you give them what they want? |
| 16 | A. Basically, yes. |

Contrary to the Defendant's assertions in its brief, the supposed high demands imposed on Caygle did not, according to Anderson's deposition, significantly impact First Metropolitan's decision to pay Caygle a higher base salary.

Importantly, those same demands that were communicated to Caygle were the actual demands on Hutcherson when she served as Branch Manager prior to Caygle. While First Metropolitan does not identify how many outstanding accounts the Tupelo branch had during Hutcherson's tenure, it does state that the branch had 600 accounts when Caygle was hired. Because Hutcherson managed that branch immediately before Caygle, it is reasonable to conclude that Hutcherson also had high demands to ensure those accounts were managed properly. Yet, Hutcherson was paid $25,000.00 less than Caygle.[4]

Thus, the Commission has established that the two female Branch Managers performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as the male Branch Managers.

Finally, the Commission must prove that the female Branch Managers were nonetheless paid less than male Branch Managers. It is undisputed that Caygle made more than both Emily Smith and Hutcherson. The Commission contends that Caygle made almost $25,000.00 more than Hutcherson and $10,000.00 more than Emily Smith. In fact, Emily Smith's original base salary

---

[4] At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

was $33,600.00 (which increased by $3,000.00 when she transferred to the Fulton branch) and Hutcherson's base salary was $23,600.00 compared to Caygle's $48,000.00 base salary.

For these reasons, the Court finds that the Commission has established a *prima facie* case of wage discrimination under the Equal Pay Act.

  ii.  *Equal Pay Act Exceptions*

The Act also establishes four exceptions—including a general catchall provision—where different payment to employees of opposite sexes is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. *Corning Glass Works*, 417 U.S. at 195, 94 S. Ct. at 2228. The Defendant here submits that the differential in pay is based on a factor other than sex. Specifically, the Defendant states that prior training, experience, and salary expectations were the factors other than sex that justifies the differences in pay between female and male Branch Managers.[5]

First, the Defendant claims that Caygle's training and experience justifies higher pay. According to Caygle's application, he had four years of Branch Manager experience prior to applying at First Metropolitan. The Defendant conceded in its brief that Caygle did not have significant prior experience. Emily Smith, however, had ten years of finance management experience before applying for a Branch Manager position at the Tupelo branch and even more experience when she was transferred to the Fulton branch. Hutcherson had five years of management experience prior to being promoted to the Branch Manager position at the Tupelo

---

[5] The Defendant asserts that binding authority has recognized prior training, experience, and salary expectations as "factors other than sex" for the purposes of the Equal Pay Act. However, out of the three cases cited to support this proposition—*Pouncy v. Prudential, Ins. Co.*, 668 F.2d 795 (5th Cir. 1982), *EEOC v. TXI Operations, L.P.*, 394 F. Supp. 2d 868 (N.D. Tex. 2005), and *Lyons v. Burlington Coat Factory Warehouse*, 2004 WL 515585 (N.D. Tex. 2014)—the only Equal Pay Act case is a federal district court case and is therefore nonbinding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 131 S.Ct. 2020, 179 L. Ed. 2d 1118 (2011) (finding that "a decision of a federal district court judge is not binding precedent").

branch. Considering that the two female employees had more training and experience than Caygle, First Metropolitan's claim the differential is justified based on training and experience falls flat.

Second, the Defendant claims that the salary demands and expectations of the Branch Managers are factors other than sex and therefore justifies the differentials in pay. Anderson testified that when interviewing candidates, he asks for their expected salary and if the request is not too high, he makes an offer. Caygle, according to Anderson, "made a take it or leave salary demand" of $48,000.00. Anderson also testified that he offered Caygle the position with a base salary of $48,000.00, including the travel stipend. But Anderson and First Metropolitan did not utilize the same practice with Emily Smith or Hutcherson. Although Emily Smith requested a base salary of $43,500.00, she was offered only $33,600.00 and was informed that First Metropolitan could not afford the $43,500.00 that she requested. Anderson never asked Hutcherson for her preferred salary, even after she had previously worked in every employment level at First Metropolitan. Instead, she was informed that her salary would be $23,000.00, the same as her Assistant Manager salary.

First Metropolitan has failed to prove that one of the exceptions within the Act applies. Therefore, the Commission's Equal Pay Act claim survives summary judgment as questions of fact exists as to whether First Metropolitan discriminated against Emily Smith and Hutcherson on the basis of sex.

II.  *Title VII Claim*

Title VII of the Civil Rights Act of 1964 prohibits intentional discrimination, in particular wage discrimination, in the workplace. It is unlawful "for an employer to . . . otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a)(1). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975*)); see also University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

Title VII and the Equal Pay Act are independent laws seeking to remedy unlawful discrimination in the workplace—seemingly pursuing the same goal. But, obvious inconsistencies began to surface because each law had different elements and factors to be applied. "Several Senators expressed concern that insufficient attention had been paid to possible inconsistencies between the statutes." *Washington County v. Gunther*, 452 U.S. 161, 172, 101 S. Ct. 2242, 2249, 68 L. Ed. 2d 751 (1981). The Bennett Amendment was proposed to resolve these inconsistencies.[6] In the wage discrimination context, the Bennett Amendment merges the four affirmative defenses into the Title VII analysis. *See* 42 U.S.C.A. § 2000e-2(h) (incorporating EPA exceptions into Title VII). The Court explained that "the Bennett Amendment has the effect of guaranteeing that courts and administrative agencies adopt a consistent interpretation of like provisions in both statutes. Otherwise, they might develop inconsistent bodies of case law interpreting two sets of nearly identical language." *Gunther*, 452 U.S. at 161, 101 S. Ct. 2242.

In Title VII cases, courts utilize the following burden shifting analysis and order of proof enunciated by the Supreme Court in *McDonnell Douglas Corporation v. Green*:

---

[6] The Bennett Amendment was offered as a 'technical amendment' designed to resolve any potential conflicts between Title VII and the Equal Pay Act." *Gunther*, 452 U.S. at 170, 101 S. Ct. 2242.

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S. Ct. 1817). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *See Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, n. 2, 99 S. Ct. 295, 296, n. 2, 58 L. Ed. 2d 216 (1978). In addition to the defendant's burden to articulate some legitimate, nondiscriminatory reason for the adverse employment action, the defendant must also identify whether their conduct fell within one of the four exceptions identified within the Equal Pay Act pursuant to 42 United States Code section 2000e-2(h). *See Gunther*, 452 U.S. at 170, 101 S. Ct. 2242.

    *i.     Prima Facie Case*

The plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *See Texas Dept. of Community Affairs*, 450 U.S. at 253, 101 S. Ct. at 1093. In order to establish a *prima facie* case of employment discrimination the plaintiff must establish the following: "(1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subjected to adverse employment action; and (4) was replaced by someone outside the protected class or in disparate treatment cases, was treated less favorably than similarly situated employees." *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 513 (5th Cir. 2001); (*citing Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)). A

*prima facie* case "raises an inference of discrimination only because [courts] presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Texas Dept. of Community Affairs*, 450 U.S. at 254, 101 S. Ct. at 1094. "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Id*.

Having found that the Plaintiff successfully established a *prima facie* case under the Equal Pay Act, the Court also finds that the evidence used under the EPA burden is sufficient to establish a *prima facie* case under Title VII. *See Plemer*, 713 F.2d 1127, 1137 (5th Cir. 1983) (finding that a plaintiff's *prima facie* EPA case where she compared the salary of her predecessor to prove she was paid less for performing the same job was sufficient evidence to also make out a *prima facie* compensation case under Title VII).

    ii.    *Legitimate, Nondiscriminatory Reason*

The burden of production now shifts to the Defendant to articulate some legitimate, nondiscriminatory reason in light of the four exceptions outlined in the Equal Pay Act. *See Gunther*, 452 U.S. at 170, 101 S. Ct. 2242; 42 U.S.C.A. § 2000e-2(h). "This obligation arises both from the necessity of rebutting the inference of discrimination arising from the *prima facie* case and from the requirement that the plaintiff be afforded 'a full and fair opportunity' to demonstrate pretext." *Texas Dept. of Community Affairs*, 450 U.S. at 258, 101 S. Ct. at 1096; *citing EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 101 S. Ct. 817, 66 L.Ed.2d 762 (1981). "The defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Id*. The Defendant argues that Caygle's salary was set based on and in response to unique business needs at the time he was hired. In particular, Anderson claims that when Hutcherson resigned, First Metropolitan either needed to hire someone quickly or close the branch because it did not have a

Branch Manager. First Metropolitan argues that this explanation, in concert with Caygle's "take it or leave it" demand, constitutes a factor other than sex.

Because an employer "need only articulate—not prove—a legitimate, nondiscriminatory reason", the Court finds that First Metropolitan has met its burden of production and the Court now proceeds to the pretext analysis. *See Texas Dept. of Community Affairs*, 450 U.S. at 258, 101 S. Ct. at 1096.

    *iii.*    *Pretext*

The burden of production now shifts back to the Plaintiff to establish that First Metropolitan's legitimate, nondiscriminatory reason is pretextual. *See McDonnell Douglas*, 411 U.S. 792, 802, 93 S. Ct. 1817. "At this step of the *McDonnell Douglas* analysis, the [Title VII] plaintiff must prove that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015); *citing Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224 (5th Cir. 2015) (internal quotations omitted). "A plaintiff may establish pretext 'by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence.'" *Id.*

First, the Commission argues that First Metropolitan's claim that the Tupelo branch was in a "bind" is meritless because there is undisputed evidence that First Metropolitan routinely operates branches larger than the Tupelo branch without managers for short periods of time. In Anderson's deposition, he stated that the Batesville branch operated without a Branch Manager for at least two months after its Branch Manager, Lin Pearson, was fired. *See* Anderson Dep. [41-6]. During those months, according to Anderson, a new Branch Manager was being trained and the Batesville office only had two employees—a Customer Service Representative and an

Assistant Manager. Also, it is important to note that the circumstances at the time that Caygle was hired were similar to the circumstances when Hutcherson was promoted. Hutcherson became Branch Manager after Emily Smith was transferred to the Fulton branch. Thus, at the time of Hutcherson's promotion, the Tupelo branch did not have a Branch Manager.

Second, the Commission argues that First Metropolitan's claim that they considered the individual's salary demands when setting their base salary is also meritless. Anderson testified that, "when I'm hiring them [Branch Manager candidates], I ask them how much they're wanting." *See* Anderson Dep. [41-6]. As long as it is not "way out of range", Anderson testified that he would give them the amount they requested. *See id*. The Commission submits that this is pretext because First Metropolitan did not give female candidates the salary they requested, even when it was below the higher salary given to male candidates. Caygle, a male candidate, requested $48,000.00 and was offered that salary. In contrast, Emily Smith, a female candidate, requested $43,500.00 but was offered $33,600.00. Hutcherson, a female candidate, was not given an opportunity to make a salary demand but instead was informed that she would be paid $23,600.00 annually.

While First Metropolitan claims that it offered candidates their requested salary, unless it was astronomical, it nonetheless refused to pay Emily Smith what she requested even though her requested salary was $4,400.00 less than what the Defendant agreed to pay Caygle. In addition, the Defendant's claim that the circumstances surrounding the Tupelo branch necessitated the differential is highly suspicious considering evidence that the Defendant allowed the Batesville branch, which was larger than the Tupelo branch at the time, to remain open with only two employees while their new Branch Manager was away for training. Accordingly, the Defendant's legitimate, nondiscriminatory reason and claim that the differential in pay was based on factors other than sex is incredible. Because questions of fact exist as to whether the differences in pay

17

was based on sex, Summary Judgment must be denied and a jury must determine whether the Defendant discriminated against the female Branch Managers.

*Conclusion*

For all the reasons discussed above, the Defendant's Motion for Summary Judgment [37] is DENIED.

SO ORDERED this, the 27th day of March, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE